IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CLAYTON L. HOWARD,

Petitioner,

v.

MARK NOOTH,

Respondent.

Case No. 3:11-cv-00447-HU

FINDINGS AND RECOMMENDATION

Ryan Edward Scott
Law Office of Ryan Scott
1549 SE Ladd Avenue
Portland, Oregon 97214

    Attorney for Petitioner

Ellen F. Rosenblum, Attorney General
Nick M. Kallstrom, Assistant Attorney General
Department of Justice
1162 Court Street NE
Salem, Oregon 97310

    Attorneys for Respondent

 1 - FINDINGS AND RECOMMENDATION

HUBEL, Magistrate Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2254 challenging a 2007 decision by the Oregon Board of Parole and Post-prison Supervision ("Board") deferring his release. For the reasons that follow, the Second Amended Petition for Writ of Habeas Corpus (#42) should be denied.

<u>**BACKGROUND**</u>

Petitioner was convicted of several crimes in 1981, including two counts of Rape in the First Degree which resulted in two consecutive 20-year sentences. He does not challenge the legality of his convictions or resulting sentence. Instead, he challenges the June 20, 2007 decision of the Board to defer his release for failure to fully cooperate in a psychological evaluation.

On November 29, 2006, the Board first notified petitioner that he would be scheduled for a psychological evaluation. Respondent's Exhibit 103, p. 159. The Board scheduled the appointment with Dr. Stuckey for December 1, 2006. On December 1, 2006, petitioner responded in writing that he had pending litigation against Drs. Stuckey, Colistro, and Shellman, thus a conflict of interest existed. *Id.* As a result, Dr. Stuckey did not perform the scheduled evaluation.

On December 5, 2006, the Board advised petitioner that it had arranged another psychological evaluation, this time with Dr. McGuffin. *Id.* Petitioner responded in writing five days later,

asking for the exact date the evaluation would take place so that his attorneys could be present. *Id.*

On December 10, 2006, petitioner again wrote to the Board. He advised the Board that based upon the issues raised in his numerous cases against the Board and its psychologists, it would be a conflict for <u>any</u> psychologist contracted by the Board to interview him. *Id* at 163-64.

On December 13, 2006, the Board responded that it would not allow petitioner's attorneys to be present during the evaluation. *Id* at 161. It also informed petitioner:

> The board does not believe there is any
> conflict in referring you to be evaluated by
> Dr. McGuffin. The board notes your contention
> that there is pending litigation in federal
> court regarding four of our contracted
> psychologists. Whether there is pending
> litigation against one or all of our board-
> contracted psychologists, the board will still
> require you to be evaluated by a board-
> contracted psychologist prior to your exit
> interview hearing.
>
> If you decide to refuse to fully cooperate
> with the pending psychological evaluation,
> please write and let me know.

*Id.*

On January 12, 2006, petitioner met with Dr. McGuffin but declined to be evaluated. While he claimed that he was not refusing to participate, he would not engage in the evaluation due to his existing litigation concerning his criminal convictions. *Id* at 157.

3 - FINDINGS AND RECOMMENDATION

The Board next notified petitioner of an upcoming hearing on March 21, 2007. The Board's notice classified the hearing as an exit interview during which a psychological evaluation would be considered. Respondent's Exhibit 106, Att. E. At that hearing, the Board expressly told petitioner, "we need a decision from you today whether you want to participate in a psychological evaluation or not." Respondent's Exhibit 103, p. 126. It further explained, "And that's the only issue . . . that's going to be decided here today, whether you want to participate in a psychological evaluation or not." *Id.*

A lengthy discussion was conducted on the record where petitioner stated that it was acceptable to have his attorneys absent from such an evaluation, but that he had refused to cooperate when Dr. McGuffin did not allow him to record the evaluation. The Board made very clear to petitioner, "I just want you to know that you cannot have it recorded." *Id* at 134. "[Y]ou wanted to have it audio-recorded. That wasn't going to happen, because that's not you fully participating in the evaluation." *Id* at 135.

Petitioner also expressed his reservations about participating in a psychological evaluation for fear that he might be required to make incriminating statements regarding his crimes of conviction which, theoretically, might be overturned on appeal. The Board was very clear that any refusal to fully answer all questions during

the psychological evaluation would be considered a refusal to fully cooperate. *Id* at 138.

The Board ultimately offered to set up another evaluation for petitioner "to give you every opportunity to fully cooperate with Dr. McGuffin's evaluation, and so that he can complete it before we treat it as a refusal or not." *Id* at 142. The Board indicated that Dr. McGuffin might not ask petitioner any questions at all about his underlying crimes from 1981, thus petitioner's concerns might be premature. The Board advised petitioner it would see him in late June or early July of 2007 after the psychological evaluation. *Id* at 147.

Six days later, on March 27, 2007, the Board informed petitioner in writing of his rescheduled psychological evaluation with Dr. McGuffin. *Id* at 66. The letter specifically warned, "If you do not fully cooperate with the psychological evaluation (this includes the interview and/or testing) the board will consider this to be a refusal and will defer your release date close to your good time date pursuant to OAR 255-050-0013." *Id.* Soon thereafter, the Board issued Board Action Form #8 as follows:

> Inmate refused to participate in the board-ordered psychological evaluation per letter from Dr. Gary McGuffin dated 01/11/07.
>
> Continued. [Petitioner] indicated that he is willing to fully cooperate with the psychological evaluation. Reschedule on 06/20/04.

*Id* at 112.

    5 - FINDINGS AND RECOMMENDATION

On April 2, 2007, petitioner wrote a letter to the Board again informing it of a conflict of interest he purported to have with Dr. McGuffin based upon a complaint petitioner filed against him with the Oregon Board of Psychological Examiners. *Id* at 124. Petitioner also sent a letter directly to Dr. McGuffin concerning the matter, and included a copy of the complaint he had filed. *Id.* As a result, Dr. McGuffin informed the Board that he was no longer willing to evaluate petitioner. *Id* at 121.

On April 23, 2007, the Board sent petitioner a letter indicating it had set up yet another psychological evaluation for him:

> I have contacted Dr. F. Robert Stuckey and he has agreed to evaluate you for the board. He is unaware of any pending litigation involving the 2001 report he completed on you for the board. I also discussed with Dr. Stuckey the fact that you do not wish to discuss your convictions. Dr. Stuckey also understands the board's position on not allowing the interview to be tape-recorded or to allow anyone else to be present during the evaluation process.
>
> I believe that Dr. Stuckey plans on seeing you on Friday, May 11, 2007. **You need to let me know in writing as soon as possible whether you decide to cooperate with the evaluation or refuse the testing and/or interview with Dr. Stuckey.**

*Id* at 121 (bold in original).

On April 26, 2007, petitioner wrote directly to Dr. Stuckey asking him to recuse himself from the scheduled evaluation. Petitioner accused Dr. Stuckey of being a racist, advised him that

6 - FINDINGS AND RECOMMENDATION

pending litigation petitioner previously filed against him created a conflict of interest, and informed him that "any evaluation conducted by you will result in further complaints with the Board of Psychological Examiners Office, and the pending litigation will be amended." *Id* at 120. Based upon the contents of this letter, Dr. Stuckey informed the Board that he would not meet with petitioner. *Id* at 180.

The Board sent petitioner official notice of his upcoming hearing scheduled for June 20, 2007, and again classified it as an exit interview at which a psychological evaluation would be considered. Respondent's Exhibit 106, Att. E. At that hearing, petitioner complained that one of the three Board members, Steven Powers, had been involved as an attorney for the State during his prior criminal litigation. Petitioner stated that a conflict of interest should disqualify him from the hearing. The Board agreed, and Powers left the room and did not take part in the hearing. *Id* at 171.

The remaining members of the Board detailed its prior attempts to have petitioner evaluated by a psychologist, and reiterated that since its letter of December 13, 2006, petitioner had clearly been advised, "Whether there is pending litigation against one or all of our Board-contracted psychologists, the Board will still require you to be evaluated by a Board-contracted psychologist prior to your Exit Interview hearing." *Id* at 174. Because petitioner had not fully cooperated, the Board denied release on parole, set a

7 - FINDINGS AND RECOMMENDATION

firm release date of March 14, 2011,[1] and advised petitioner that if he changed his mind about participating in a psychological evaluation in the next two years, he could write to the Board and request to participate in one. *Id* at 175. The Board then issued a formal written decision notifying petitioner of the parole deferral. *Id* at 178-80.

Petitioner filed for administrative review of the Board's decision, but the Board adhered to its determination. *Id* at 203-04. This prompted petitioner to file a petition for judicial review. The Oregon Court of Appeals affirmed the Board without issuing a written decision, and the Oregon Supreme Court denied review. *Howard v. Board of Parole*, 236 Or. App. 269, 236 P.3d 851, *rev. denied*, 349 Or. 370, 246 P.3d 482 (2010).

Petitioner filed his Second Amended Petition for Writ of Habeas Corpus on June 11, 2012 in which he claims that the Board denied him his right to due process of law under the Fourteenth Amendment when it failed to give him proper notice of his June 20, 2007 hearing and did not provide him with an opportunity to be heard. Respondent asks the court to deny relief on the Second Amended Petition because petitioner's claim lacks merit.

///

---

[1] Although the Board established a "firm" release date of March 14, 2011, petitioner remains in custody and the Oregon Department of Corrections currently shows his "Earliest Release Date" as May 10, 2017, a date which it also categorizes as a "firm" date.

8 - FINDINGS AND RECOMMENDATION

## DISCUSSION

### I.    Standard of Review

An application for a writ of habeas corpus shall not be granted unless adjudication of the claim in state court resulted in a decision that was: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). A state court's findings of fact are presumed correct, and petitioner bears the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

A state court decision is "contrary to . . . clearly established precedent if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [that] precedent." *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the "unreasonable application" clause, a federal habeas court may grant relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id* at 413. The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous.

*Id* at 410.  The state court's application of clearly established law must be objectively unreasonable.  *Id* at 409.

When a state court reaches a decision on the merits but provides no reasoning to support its conclusion, the federal habeas court must conduct an independent review of the record to determine whether the state court clearly erred in its application of Supreme Court law.  *Delgado v. Lewis*, 223 F.3d 976, 982 (9th Cir. 2000). In such an instance, although the court independently reviews the record, it still lends deference to the state court's ultimate decision.  *Harrington v. Richter*, 131 S.Ct. 770, 784-85 (2011); *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

## II.  __Analysis__

When a state creates a liberty interest in parole,[2] the only federal constitutional requirements are that the inmate be given an opportunity to be heard and provided with a statement of reasons as to why his parole was denied.  *Greenholtz v. Inmates of Neb. Penal and Correctional Complex*, 442 U.S. 1, 16 (1979).  This is "the beginning and the end of the federal habeas courts' inquiry. . . ." *Swarthout v. Cooke*, 131 S.Ct. 859, 862 (2011).

Petitioner first argues that the Board violated its own rules by failing to give him proper notice of the purpose of the June 20,

---

[2]  It remains an open question whether Oregon's parole scheme gives rise to a liberty interest sufficient to implicate due process.  *See McCline v. Nooth*, 2011 WL 3298416, *8 *D. Or. Aug. 1, 2011).  For purposes of this Findings and Recommendation, the court assumes such an interest exists.

2007 hearing at which his parole was deferred.  He contends that the Board's written notices describing both the March 21 and June 20 hearings as "exit interviews" was misleading when, in fact, they were parole consideration hearings.

As noted above, due process requires only an opportunity to be heard and a statement of reasons as to why parole was denied.  To the extent the opportunity to be heard might encompass a notice requirement, the Board notified petitioner back in December 2006 that it expected him to fully comply with a psychological evaluation for consideration at his March parole hearing.  When he met with the Board on March 21, 2007, the Board engaged in an extensive colloquy with petitioner as to whether he had refused to cooperate with a psychological evaluation.  The Board made it very clear that if petitioner did not cooperate with a psychological examination, it would not grant him parole.

At the end of the March hearing, the Board specifically advised petitioner that it was scheduling the June 20 parole hearing where it would review the forthcoming psychological evaluation as part of its decision pertaining to its parole decision.  It is evident from this record that petitioner had adequate notice of the June 20 hearing and fully understood its purpose sufficient to satisfy any such due process requirement.

Petitioner also alleges that he was not given an opportunity to be heard at his June 20 hearing.  By the time the June 20 hearing took place, it was clear to the Board that petitioner still

11 - FINDINGS AND RECOMMENDATION

refused to cooperate with the psychological evaluation process. The Board nevertheless allowed petitioner an opportunity to be heard, and petitioner attempted to revisit the conflict of interest issue the Board had already covered with him in writing since December 2006 and in person at the March 21 hearing.  Respondent's Exhibit 103, pp. 171-72.

The Board was not willing to revisit issues it had previously resolved.  *Id* at 172-73.  Instead, it chronicled the efforts it had made to set up a psychological evaluation for petitioner in advance of his parole hearing and denied petitioner release on parole. While this hearing was not long, the only issue was why petitioner had not complied with the psychological evaluations.  Petitioner's answer was quite simple: he disagreed with the Board's previous determination that no conflict of interest was created by petitioner's litigation.  *Id* at 174-75.  Due process did not require the Board to entertain this argument all over again.

Upon an independent review of the record, the Board did not violate petitioner's right to due process of law, and the Oregon state court decisions denying relief on this claim are neither contrary to, nor unreasonable applications of, clearly established federal law.

## <u>RECOMMENDATION</u>

For the reasons identified above, the Second Amended Petition for Writ of Habeas Corpus (#42) should be denied and a judgment should be entered dismissing this case with prejudice.  The court

12 - FINDINGS AND RECOMMENDATION

should decline to issue a Certificate of Appealability on the basis that petitioner has not made a substantial showing of the denial of a constitutional right pursuant to 28 U.S.C. § 2253(c)(2).

### SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due February 11, 2013.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due February 28, 2013.  When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 23rd day of January, 2013.

/s/ Dennis J. Hubel

_____
Dennis J. Hubel
United States Magistrate Judge

13 - FINDINGS AND RECOMMENDATION